**Floyd D. BUCKLINGER, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–273.

United States Court of Veterans Appeals.

Argued March 22, 1993.

Decided Aug. 24, 1993.

Ronald L. Smith, Washington, DC, for appellant.

David W. Engel, Sp. Asst. to the Asst. Gen. Counsel, with whom James A. Endicott, Jr., Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, and Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and FARLEY and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, World War II veteran Floyd D. Bucklinger, appeals a January 27, 1992, Board of Veterans' Appeals (BVA or Board) decision denying an increased evaluation for his service-connected tinnitus and concluding that no new and material evidence had been submitted to reopen a claim for service connection for bilateral hearing loss. *Floyd D. Bucklinger*, BVA 92–01660 (Jan. 29, 1992). Although the appellant listed both issues in his Notice of Appeal and statement of issues filed with this Court, his arguments and requests for relief in his pleadings and at oral argument were limited to the tinnitus claim. Therefore, the Court considers the veteran in this case to have abandoned his appeal with respect to the hearing-loss claim and, accordingly, will not review the BVA decision with respect to that claim.

The appellant seeks reversal of the BVA decision with respect to the tinnitus claim. The Secretary of Veterans Affairs (Secretary) urges affirmance of the BVA decision as to that claim but concedes that remand for readjudication may be appropriate in light of deficiencies in the Board's statement of the reasons or bases for its decision. On March 23, 1993, the Court ordered the parties to file supplemental memoranda addressing the amendment history of 38 C.F.R. § 4.87a, diagnostic code (DC) 6260 (1992), the regulatory provision governing service-connected disability ratings for tinnitus. The Court received supplemental memoranda from the Secretary and the appellant on April 22 and April 28, 1993, respectively.

Upon consideration of the record and the presentations of the parties in their pleadings and at oral argument, the Court will reverse the Board's decision as to the tinnitus claim and remand the matter for further proceedings consistent with this opinion.

## I. Background

The veteran served in the U.S. Army from December 12, 1942, to November 5, 1945, including service in the Pacific Theater in World War II from January 1944 to October 1945. R. at 1. His military occupational specialties were as a cook, a "field linesman", and a heavy truck driver. R. at 3. His ears and hearing were normal upon entry into service. R. at 7. In December 1944, he was seen with complaints of ringing in the left ear, or tinnitus, and difficulty in hearing intermittently for the "past month", and he reported similar attacks for the prior seven to eight months. R. at 56. The examiner noted that hearing was 15/15 and that there was some greenish thick discharge in the left canal, and reported an impression of "external otitis". *Ibid.* In December 1944, the veteran was diagnosed with "otitis externa, diffuse, suppurative acute, left, mild, cause undet[ermined]". R. at 57, 55. (Otitis externa is "inflammation of the external auditory canal", STEDMAN'S MEDICAL DICTIONARY 1112 (25th ed. 1990).) No ear or hearing problems were noted on the separation examination. R. at 79.

In April 1946, a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) denied service connection for "left ear trouble" as "not found on [the] last examination" (his separation examination). R. at 81. A December 1946 VA examination found no hearing or ear problems. R. at 83. A May 1981 private medical examination found that the veteran had bilateral high-frequency sensorineural hearing loss. R. at 87. The examining physician noted that "he has a long[-]standing deafness with ringing in the ears which dates back to the Second World War." R. at 88.

In October 1983, the veteran filed a claim for VA service-connected disability compensation for tinnitus. R. at 98. At a December 1983 hearing before the VARO, he testified under oath that he had had ringing in the ears since his service in the Pacific (R. at 103–04, 107–08, 110–11) but that he could not recall any specific incident that had given rise to the ringing (R. at 110–11). On the basis of a January 1984 VA special ear, nose, and throat examination, a VA physician diagnosed the veteran as having bilateral sensorineural deafness and "tinnitus aurium, subjective". R. at 114. The examiner noted that the veteran thought that the ringing in his ears was due to either fungus in the ears or to the noise from guns and rifles he was required to fire during his World War II combat. *Ibid.*

In May 1984, the RO awarded service connection for tinnitus and assigned a noncompensable (0%) rating for that condition. The "Schedule for Rating Disabilities" prescribed by the Secretary in part 4 of title 38, Code of Federal Regulations, then provided (and still provides) for a compensable rating for tinnitus only when that condition is "[p]ersistent as a symptom of head injury, concussion or acoustic trauma", in which case a 10% rating is to be assigned. 38 C.F.R. § 4.84b, DC 6260 (1983); 38 C.F.R. § 4.87a, DC 6260 (1992). In its May 1984 decision, the RO concluded that "[t]he evidence of record suggest[s] that the vet-

eran's tinnitus is of disease etiology rather than acoustic trauma" and, therefore, assigned a noncompensable rating. R. at 120. The veteran did not appeal that RO decision with respect to the tinnitus award.

In January 1990, the veteran filed a claim for an increased rating for his tinnitus. R. at 130. In a May 1990 VA examination, the examining audiologist diagnosed the veteran with bilateral sensorineural hearing loss and tinnitus and stated "the tinnitus is consistent with a pure tone configuration and history of noise exposure." R. at 136. In December 1990, the RO denied the claim for an increased tinnitus rating, concluding that "the record as a whole fails to show tinnitus as due to noise exposure". R. at 138. In January 1991, the veteran filed a Notice of Disagreement with the RO decision; he asserted that, even if his tinnitus was of disease origin, it was equally disabling as tinnitus of traumatic origin and should be evaluated at the same level. R. at 139. He therefore requested that his claim be considered under 38 C.F.R. § 3.321(b)(1) (1992), which authorizes the VA Chief Benefits Director or his subordinate, the Director of VA's Compensation and Pension Service, under certain circumstances and upon submission from an RO, to approve an "extra-schedular" rating where the normal schedular ratings are found to be inadequate. In January 1991, the RO concluded that the evidence "does not show disability of such a degree concerning tinnitus as to warrant an extra[-]schedular evaluation". R. at 140.

In his March 1991 VA Form 1–9 (Appeal to the BVA), the veteran asserted that his tinnitus had been caused by in-service noise exposure rather than disease. R. at 146. In a May 1991 hearing at the RO in connection with his appeal to the Board, the veteran testified under oath that he had been involved in combat in service and had been exposed to a great deal of noise from weapons he had fired. R. at 149–57. In the January 1992 decision here on appeal, the Board concluded that the veteran's tinnitus did not result from head injury, concussion, or exposure to acoustic trauma, and, there-

fore, denied the claim for a compensable rating. The Board stated:

> The veteran has stated that he was subject to acoustic trauma while in service (T.3). However, his service medical records show that in December 1944 and January 1945 his tinnitus was reportedly associated with his otitis externa. This is a disease which causes tinnitus. Accordingly we conclude that the strongest evidence shows the tinnitus to be related to disease rather than acoustic trauma.

*Bucklinger*, BVA 92–01660, at 6. The Board further stated that under 38 C.F.R. § 3.321(b), an extra-schedular rating may be assigned for a service-connected disability when it requires frequent hospitalizations or markedly interferes with employment, but that there was no evidence of either such circumstance with respect to the veteran's tinnitus. *Ibid.*

On appeal, the appellant asserts that the Board clearly erred in concluding that his tinnitus is due to disease rather than in-service trauma. He further asserts that VA's rating schedule violates the Fifth Amendment of the U.S. Constitution because it treats veterans with disabling tinnitus of disease origin differently from those with disabling tinnitus of traumatic origin, without any rational basis for the different treatment.

## II. Analysis

### A.

■ In adjudicating claims for VA benefits, the Board is required to base its decisions upon "all evidence and material of record" and to consider all "applicable provisions of law and regulation". 38 U.S.C.A. § 7104(a) (West 1991); *see* 38 C.F.R. § 3.303(a) (1992). Furthermore, the Board is required to provide an adequate written statement of the reasons or bases for its findings and conclusions on "all material issues of fact or law presented on the record". 38 U.S.C.A. § 7104(d)(1) (West 1991); *see Gilbert v. Derwinski*, 1 Vet.App. 49, 56–57 (1990). Therefore, in making findings of fact, the Board is required to consider and discuss all evidence on both sides of the issue, and to reconcile any conflicts among such evidence or, alter-

natively, provide an explanation of the reasons for rejecting evidence favorable to the claimant or determining that such evidence is of little relative weight or probative value. *See Gilbert, supra.*

The Board's findings of facts are further governed by the "benefit-of-the-doubt" rule in 38 U.S.C.A. § 5107(b) (West 1991), which provides:

> When, after consideration of all evidence and material of record in a case before [VA] with respect to benefits under laws administered by the Secretary, there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant.

The Secretary has amplified this requirement in 38 C.F.R. § 3.102 (1992).

■ Therefore, when the Board has made its determinations as to the credibility and probative value of all pertinent evidence of record and " 'there is an approximate balance of positive and negative evidence,' the veteran prevails by operation of [section 5107(b)]." *Gilbert,* 1 Vet.App. at 56. "A properly supported and reasoned conclusion that a fair preponderance of the evidence is against the claim necessarily precludes the possibility of the evidence also being in 'an approximate balance.' " *Id.* at 58. "In a case where there is significant evidence in support of an appellant's claim …, the Board must provide a satisfactory explanation as to why the evidence was not in equipoise" so as to require application of the benefit-of-the-doubt rule. *Williams (Willie) v. Brown,* 4 Vet.App. 270, 273–74 (1993).

■ A determination as to the cause of a disability, in this case the cause of the veteran's service-connected tinnitus, is a finding of fact, which the Court reviews under a "clearly erroneous" standard. 38 U.S.C.A. § 7261(a)(4) (West 1991). Pursuant to that standard, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same

factual determinations, [it] cannot overturn them." *See Gilbert,* 1 Vet.App. at 53. Moreover, the Board may not base a decision on its own unsubstantiated medical conclusions but, rather, may reach a medical conclusion only on the basis of independent medical evidence in the record or adequate quotation from recognized medical treatises. *See Thurber v. Brown,* 5 Vet. App. 119, 123 (1993); *Hatlestad v. Derwinski,* 3 Vet.App. 213, 217 (1992); *Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991).

■ In the instant case, the Court finds no plausible basis in the record for the Board's determination that the veteran's tinnitus was caused by disease rather than trauma. The Board stated, as the basis for its conclusion, that "in December 1944 and January 1945 his tinnitus was reportedly associated with his otitis externa", that otitis externa is "a disease which causes tinnitus", and that, therefore, the "strongest evidence shows the tinnitus to be related to disease rather than acoustic trauma". *Bucklinger,* BVA 92–01660, at 6. Those service medical records from December 1944 and January 1945 indicate that the veteran had had tinnitus and difficulty hearing intermittently for the previous seven to eight months, that examination of the ears revealed normal hearing but a discharge from the left ear, and that the examiner (the same physician on both occasions) gave a diagnostic impression of "External otitis". R. at 56, 69. Those records, however, do not indicate any causal relationship between the veteran's then-diagnosed external otitis and his tinnitus. The mere fact that the veteran's complaints of tinnitus of several months' duration were recorded on the same examination reports on which external otitis was diagnosed does not by itself constitute medical authority for the proposition that the tinnitus was caused by external otitis. Moreover, there is no other evidence whatsoever in the record which would support a conclusion that the veteran's tinnitus was caused by external otitis rather than noise exposure, and the Board's medical conclusion that otitis externa is "a disease which causes tinnitus" is unsupported by any medical authority other than the Board's

own unsubstantiated opinion. *See Thurber, supra; Hatlestad, supra; Colvin, supra.*

In contrast, the veteran testified under oath that he had been exposed during service to loud noises, including noise from weapon fire in basic training and during his Pacific combat service. R. at 150–52. Furthermore, in the report of a May 1990 VA audiological examination, the examiner stated that the veteran's "tinnitus is consistent with a ... history of noise exposure." R. at 136. In view of this evidence, and in the absence of any evidence of record that the veteran's tinnitus was caused by anything other than noise exposure, there is no plausible basis for the Board's conclusion that the veteran's tinnitus was caused by disease rather than trauma. Therefore, that conclusion by the Board must be set aside under 38 U.S.C.A. § 7261(a)(4) (West 1991).

■ The Secretary concedes that there are deficiencies in the Board's reasons or bases for its conclusions as to the etiology of the veteran's tinnitus, and that such deficiencies may warrant a remand for re-adjudication. He asserts, however, that reversal is not appropriate. Remand, rather than reversal, will normally be the appropriate remedy when the Board has failed to make necessary findings of fact, or credibility and probative-value determinations, or has failed to provide an adequate explanation as to its findings of fact and the applicability of the benefit-of-the-doubt rule. *See Gilbert,* 1 Vet.App. at 58. When, however, there is no plausible basis in the record on which the Board could, on remand, support the same conclusions, a remand for a full readjudication would serve no purpose. *See Hersey v. Derwinski,* 2 Vet.App. 91, 93–95 (1992) (Court denied Secretary's motion for remand and instead reversed BVA decision because there was no plausible basis in record for BVA findings of fact); *Gilbert, supra; Jones (McArthur) v. Derwinski,* 1 Vet. App. 210, 219 (1991) (separate views regarding "[a]voiding a fruitless remand for superfluous factfinding").

■ In the instant case, there is no evidence in the record that could plausibly support a conclusion that the veteran's tinnitus was caused by disease rather than in-service acoustic trauma. *Cf. Colvin, supra.* Therefore, there is no basis upon which the Board could on remand deny the veteran's claim that his tinnitus resulted from in-service acoustic trauma. This is particularly so in light of the benefit-of-the-doubt rule, which would require that there be a "fair preponderance" of evidence showing that the veteran's tinnitus was caused by disease rather than trauma. For the reasons stated above, it is clear that that standard could not be met.

**B.**

The appellant has raised a substantial claim that the rating-schedule provisions regarding tinnitus (38 C.F.R. § 4.87a, DC 6260) violate the constitutional equal-protection guarantee because there is no rational basis for the regulatory distinction between tinnitus due to injury or trauma, which is compensable, and tinnitus due to disease, which is not. *See Saunders v. Brown,* 4 Vet.App. 320 (1993) (discussing equal protection challenge to 38 U.S.C.A. § 1922(a) (West 1991)); *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954) (applying Fourteenth Amendment's Equal Protection Clause to federal government through Fifth Amendment's Due Process Clause). Specifically, the appellant asserts that there is no rational basis for denying compensation to a person who suffers from tinnitus due to disease and awarding compensation to a person suffering from tinnitus due to trauma when the manifest symptoms and disability are the same in both cases. In his brief, the Secretary offers no rational basis for that distinction, but asserts that, as a result of 38 U.S.C.A. § 7252(b) (West 1991), the Court lacks jurisdiction to address the veteran's constitutional challenge to the rating-schedule provisions.

■ Having concluded that the Board's determination as to the cause of the veteran's tinnitus must be reversed as clearly erroneous, the Court does not address the

appellant's constitutional challenge to VA's rating schedule. It is "[a] fundamental and long-standing principle of judicial restraint ... that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Lyng v. Northwest Indian Cemetery Protective Association,* 485 U.S. 439, 445, 108 S.Ct. 1319, 1323, 99 L.Ed.2d 534 (1988); *see Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 2997, 86 L.Ed.2d 664 (1985); *Felton v. Brown,* 4 Vet.App. 363, 368 (1993). Of course, the Secretary is free to initiate a review of the justification for the rating-schedule provisions involved here.

### III. Conclusion

Upon consideration of the record and the submissions of the parties, the Court reverses the January 27, 1992, BVA decision and remands the matter for assignment of a compensable disability rating, which may entail remand to the RO for such purpose, for the veteran's service-connected tinnitus under the provisions of 38 C.F.R. § 4.87a, DC 6260 (1992) and consistent with this opinion.

**REVERSED AND REMANDED.**